UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LUCIA GASON,

                Plaintiff,                Case No. 15-cv-10770

v                                            Honorable Thomas L. Ludington

DOW CORNING CORPORATION,

                Defendant.

_____/

### ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

On March 3, 2015, Plaintiff Lucia Gason filed a complaint alleging that her employer Dow Corning Corporation transferred her to Belgium in retaliation for filing a race and national origin discrimination complaint with the Equal Employment Opportunity Commission. She alleges that Dow Corning retaliated against her in violation of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, and Michigan's Elliott-Larsen Civil Rights Act.

On March 13, 2015, Gason filed a motion for preliminary injunction seeking, *inter alia*, to enjoin Dow Corning from forcing her to relocate to Belgium in April 2015. Gason's request for a preliminary injunction prohibiting Dow Corning from transferring her to Belgium will be denied.

**I.**

Gason is Belgian citizen of Japanese and Belgian ancestry.[1] Compl. ¶ 10. She began working with Dow Corning in Belgium in August 1993. *Id.* ¶ 9.

---

[1] The facts asserted in Gason's Complaint and briefs will be accepted as true to the extent that Dow Corning does not dispute them. Likewise, the facts in Dow Corning's papers will be accepted as true to the extent that Gason does not dispute them. Where the alleged facts relevant to the instant motion for preliminary injunction differ, the Court will note that dispute.

In February 2007, Dow Corning transferred Gason to its headquarters in Midland, Michigan, as an expatriate under a Belgian contract. *Id.* ¶ 11. About five years later, in December 2011, Dow Corning promoted Gason to Director of Procurement. Because this was a Director-level position, Gason had to be "localized" and give up her expatriate status.[2] Gason alleges that Dow Corning promised to apply for a Green Card on Gason's behalf since she was giving up her expatriate status. *Id.* ¶ 16. Because applying for a green card is a lengthy process, Gason was localized under a L1-A visa in April 1, 2012.[3] *Id.* ¶ 17. Dow Corning acknowledges that it began applying for a green card on Gason's behalf.

### A.

In September 2014, Shrenik Nanvati (Gason's immediate manager) and the Procurement leadership decided to remove Gason from the role of Procurement Shared Services Manager. Stokes Decl. ¶ 4. Dow Corning contends that the decision "was based on serious and continuing problems that had come to Nanavati's attention during Gason's time in the role." Def.'s Resp. 4. Gason disputes this allegation; for purposes of Gason's motion, however, this dispute of fact need not be resolved.

Heidi Landry Chan, Vice President of Procurement and Logistics, believed that Gason could be an effective category manager; however, no category manager position was open at the time. Def.'s Resp., Stokes Decl. ¶ 5. Ms. Chan determined that she could create a new category manager position, but that it would have to be based in Belgium to support Dow Corning's operations in Europe. Gason contends that, in September 2014, Dow Corning informed her that she would be transferred to Belgium in June 2015 for the newly-created category manager position. Pl.'s Mot. Prel. Inj. ¶ 12. After the decision was made to transfer Gason to the new

---

[2] At the hearing, Gason's counsel explained that giving up expatriate status meant that Gason gave up her Belgian pension, her car and insurance allowance, and tax advice, among other things.
[3] L1-A visas expire after seven years, with credit (or "recoupment") given for time spent out of the Country.

category manager position in Belgium, the process of seeking a green card for her was abandoned. Def.'s Resp., Stokes Decl. ¶ 6.

At the hearing, Gason's counsel contended that Dow Corning had always intended to transfer Gason when her visa expires—and not before then, which is why the June transfer date was selected. And Gason's counsel further explained that later research confirmed that Gason's visa expires in October 2015, and that, accordingly, the transfer date should be in October, not in June or April.

In contrast, Dow Corning's counsel disputes that Dow Corning ever tied Gason's transfer to the expiration of her visa. He further disputed that Dow Corning had ever identified June 2015 as Gason's official transfer date.

For purposes of Gason's motion for preliminary injunction, this Court will accept Gason's assertion in her complaint—that Dow Corning represented to Gason in September 2014 that her transfer date was June 2015—as true.

**B**.

A month after Mr. Nanvati informed Gason of his decision to transfer her to Belgium, in October 2014, Gason filed an ethics complaint with Dow Corning attorney Courtney Goldberg, claiming that her supervisor Ms. Chan was discriminating against her because of her ancestry and ethnicity. Compl. ¶ 28. Gason alleges that Ms. Chan "repeatedly told Gason that Chan strongly preferred to work with native English speakers." *Id.* ¶ 29.

On November 7, 2014, Human Resources Director Stokes met with one of Gason's peers, Heena Mehta, to discuss Mehta's concerns about Gason's conduct. Mehta explained that Gason had asked Mehta to "plead her case to Kristy, to try and save her job." Def.'s Resp. Stokes Decl. ¶ 9. Mehta felt that Gason's request was coercive and that Gason was undermining support for

whomever replaced her as Procurement Shared Services Manager. *Id*. About two weeks later, on November 10, 2014, Dow Corning suspended Gason with pay while it investigated the assertions. Compl. ¶ 30.

On November 12, Stokes met with Gason to review the outcome of the investigation. Stokes informed Gason that she could only return to work if she agreed to the terms of a "Last Chance Agreement." The Last Chance Agreement listed the alleged instances of misconduct and warned that "[i]f you violate Dow Corning's Code of Conduct, or if you do not positively change your actions and behaviors in accordance with Dow Corning's policies, further disciplinary action will be taken up to and including termination of employment." Def.'s Resp. Stokes Decl. Ex. 3. Stokes also offered Gason the alternative of accepting a severance package. Compl. ¶ 34.

### C.

On December 30, 2014, Gason filed a charge of discrimination with the EEOC alleging discrimination based on national origin/ancestry and retaliation. Compl. ¶ 35. In her EEOC complaint, she alleged discrimination "because [of] her national origin including her ancestry, culture, linguistic characteristics common to a specific ethnic group, or accent, or characteristics of this status." *Id*. at ¶ 54.

### D.

About one month later, on January 28, 2015, Dow Corning advised Gason that she would be transferring to Belgium in early April 2015. *Id*. at ¶ 36. Dow Corning expected her to "report to your assigned work location in Belgium on Tuesday April 7, 2015." Def.'s Resp. Stokes Decl. Ex. 4.

### II.

A preliminary injunction is an extraordinary remedy "which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Co. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). To determine whether a preliminary injunction should issue, the Court must consider four factors: (1) the movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *Workman v. Bredesen*, 486 F.3d 896, 905 (6th Cir. 2007). These four factors "are factors to be balanced not prerequisites that must be met." *Six Clinics Holding Corp., II v. Cafcomp Syst.*, 119 F.3d 393, 400 (6th Cir. 1997).

### A.

Under this standard, Gason must first show that there is a likelihood of success on the merits of her claims; that is, Dow Corning retaliated against her in violation of Title VII, § 1981, and ELCRA. Dow Corning claims that Gason cannot make this showing because (1) she had not exhausted her administrative remedies with respect to her Title VII claims; (2) she cannot establish a prima facie case of retaliation under § 1981; and (3) she cannot show entitlement to injunctive relief pursuant to ELCRA.

### i.

Gason first alleges that Dow Corning retaliated against her after she filed a complaint with the EEOC in violation of Title VII. According to Gason, her EEOC complaint alleged that Dow Corning unlawfully discriminated against her "because [of] her national origin including her ancestry, culture, linguistic characteristics common to a specific ethnic group, or accent, or characteristics of this status." Compl. ¶ 54. Under Title VII, once an individual files a charge

alleging unlawful employment practices, the EEOC must investigate the charge and determine whether there is "reasonable cause" to believe that it is true. *See* 42 U.S.C. § 2000e-5(b) (1998). Where the EEOC investigates a charge and, after 180 days, either concludes that there is no "reasonable cause" to believe it is true or fails to make a finding of "reasonable cause," the EEOC must notify the aggrieved individual. *See* 42 U.S.C. § 2000e-5(f)(1). Alternatively, if the EEOC finds "reasonable cause" to believe an employer has violated Title VII but chooses not to bring suit on behalf of the federal government, the EEOC will issue a "notice of right to sue" on the charge of the aggrieved party. *See* 29 C.F.R. § 1601.28(b). "An individual may not file suit under Title VII if she does not possess a 'right to sue' letter from the EEOC." *E.E.O.C. v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 455-56 (6th Cir. 1999) (citing *Rivers v. Barberton Bd. of Educ.*, 143 F.3d 1029, 1032 (6th Cir. 1998).

In accordance with Title VII's statutory scheme, the Sixth Circuit has clarified that "for 180 days after the filing of a charge, the EEOC retains 'exclusive' jurisdiction over the subject matter of that charge." *Frank's Nursery*, 177 F.3d at 456 (citing *General Tel. Co. v. EEOC*, 446 U.S. 318 (1980). "This 180-day period is 'critical to the statutory scheme.'" *Id*. (quoting *EEOC v. Hearst Corp.*, 103 F.3d 462, 466 (5th Cir. 1997)). Therefore, "it is only at the termination of the 180-day period of exclusive jurisdiction that a 'complainant whose charge is not dismissed or promptly settled or litigated' may bring a lawsuit." *Id*. (citing *Occidental Life Ins. v. EEOC*, 432 U.S. 355, 361 (1977)). Accordingly, an aggrieved individual is barred from suing a private employer in federal court during that 180-day period without authorization from the EEOC. *Id*.

Here, Gason filed a complaint with the EEOC on December 30, 2014. Only about ninety of the required 180 days has elapsed since she filed that complaint, and she acknowledges that she has not received a right to sue letter or other permission to bring suit from the EEOC.

Because she has not complied with the administrative requirements of the statute, Gason cannot succeed on her Title VII claim. *Jerome v. Viviano Food Co.*, 489 F.2d 965, 966 (6th Cir. 1974) (denying plaintiff's request for preliminary injunction and dismissing suit, holding that an EEOC opportunity for investigation and conciliation is at the heart of the Title VII remedy and may not be avoided by a litigant in order to bring a judicial complaint.). Accordingly, Gason's Title VII claim is premature, and therefore she has not demonstrated a likelihood of success on the merits of her of Title VII claim at this time. Accordingly, this claim cannot form the basis of her request for injunctive relief.

**ii**.

Dow Corning next claims that Gason cannot succeed on her § 1981 claim because the protected conduct at issue—the filing of an EEOC complaint—was based only on alleged national-origin discrimination. In this Circuit, a § 1981 claim based on national origin discrimination, as opposed to race discrimination, is not actionable. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (citing *Saint Francis Coll.*, 481 U.S. at 613); *Ana Leon T. v. Federal Reserve Bank of Chicago*, 823 F.2d 928, 931 (6th Cir. 1987)).

In her complaint, Gason explains that she filed "a charge of discrimination with the EEOC alleging discrimination based on national origin/ancestry and retaliation." Compl. ¶ 35. In her EEOC charge, Gason claims that Chan "had repeatedly told Gason that Chan strongly preferred to work with native English speakers." *Id.* ¶ 28. But this comment would be indicative of a claim for national-origin discrimination, not race discrimination. The characteristic of speaking English as a first-language of a country of origin, and therefore Gason's EEOC complaint charges Dow Corning with national-origin discrimination. *See In re Rodriguez*, 487 F.3d 1001, 1008-09 (6th Cir. 2007) (collecting cases). Therefore, for purposes of her motion for

preliminary injunction, Gason has not shown that she engaged in protected conduct under § 1981 which prohibits only race discrimination.

### iii.

Dow Corning next claims that Gason cannot establish a prima facie case of retaliation in violation of ELCRA, which does prohibit national-origin discrimination and retaliation. To establish a prima face case of retaliation under ELCRA, a plaintiff must demonstrate that (1) the plaintiff engaged in protected conduct; (2) the exercise of the plaintiff's civil rights was known to the defendant; (3) the defendant thereafter undertook an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. *In re Rodriguez*, 487 F.3d at 1011 (citing *Barrett v. Kirtland Cmty. Coll.*, 628 N.W.2d 63, 70 (Mich. Ct. App. 2001). "To establish causation, the plaintiff must show that his participation in activity protected by the [ELCRA] was a *significant factor* in the employer's adverse employment action, not just that there was a causal link between the two." *Barrett*, 628 N.W.2d at 70 (emphasis added) (internal quotation marks omitted). In Michigan, "[s]omething more than a temporal connection between protected conduct and an adverse employment action is required to show causation where discrimination-based retaliation is claimed." *West v. General Motors Corp.*, 665 N.W.2d 468, 473 (Mich. 2003).

For purposes of her motion for preliminary injunction, the only adverse action that Gason is claiming is that Dow Corning accelerated her transfer date to her new position in Belgium. Gason explains that in September 2014, Dow Corning informed her that she would be transferred to Belgium in June 2015 (about nine months later)—which was also the date that Dow Corning believed that her visa would expire. Compl. ¶ 26. In her papers, Gason claims that on January

28, 2014, Dow Corning accelerated her transfer date to April 2015[4] just thirty days after she filed her discrimination claim with the EEOC, and therefore timing alone is sufficient to create an inference of causation.

But the Michigan Supreme Court has held that temporal proximity alone is insufficient to create an inference that the protected conduct was a "significant factor" in the defendant's decision to take an adverse action. *See West*, 665 N.W.2d at 472-73. At the hearing, Gason's counsel identified another instance that allegedly supports an inference of retaliation: during a training session on March 23, 2015, Ms. Chan allegedly stated something to the effect of "It's nice to be in a room with people who speak English." This vague and unsubstantiated comment, made about two months after Dow Corning accelerated Gason's departure date, is too attenuated to create an inference of causation. Accordingly, because Gason has not demonstrated a causal connection between her filing of the EEOC complaint and the acceleration of her departure date, Gason has not shown a substantial likelihood of success on the merits of her claim.

**B.**

Although Gason has not demonstrated a likelihood of success on the merits, it is important to address the types of relief she has requested before addressing the remaining preliminary injunction factors. Her motion for preliminary injunction seeks seven forms of injunctive relief: (1) enjoin Defendant from transferring Gason to Belgium without consent of the Court; (2) require Defendant to maintain Gason's employment in the United States until the Equal Employment Opportunity Commission has concluded its investigation; (3) require defendant to maintain Gason's employment in the United States in a qualifying position by requiring Defendant to make a legitimate, good faith effort to secure for Gason the Green Card

---

[4] Dow Corning disputes the factual allegation that it accelerated Gason's departure date, contending that it never identified June 2015 as the official date and instead discussed a transfer as early as April 2015.

as previously promised; (4) require Defendant to maintain Gason's employment in the United States while she makes alternate arrangements to remain the United States; (5) require Defendant to maintain Gason's employment in the United States until the expiration of her visa so that she may wrap up her affairs, sell her home, and return to Belgium in an orderly manner; (6) mandate that Defendant stop engaging in any type of retaliation; and (7) provide such other relief as the Court deems just and equitable.

As Gason emphasizes, the only adverse action raised in the motion for preliminary injunction is the acceleration of her transfer from June 2015 to April 2015. Accordingly, any relief awarded must be related to and arise out of that adverse action. Therefore, the only form of injunctive relief available based on Gason's papers is an injunction prohibiting Dow Corning from forcing Gason to relocate before June 2015—the original relocation date.[5] The Court will not enjoin Dow Corning from relocating Gason after that date. Gason acknowledges that Dow Corning's decision to relocate her to Belgium in June 2015 was made prior to any of Gason's protected activity. Gason cannot now use her EEOC discrimination complaint to overcome that initial relocation decision. Therefore, Gason's second, fourth, and fifth forms of injunctive relief will be denied.

Accordingly, the only relief that this Court could grant Gason is an injunction prohibiting Dow Corning from forcing her to relocate to Belgium before June 2015. Whether that relief is in fact warranted is discussed below.

**C.**

---

[5] At the hearing, Plaintiff's counsel requested a preliminary injunction through October 2015, when her visa expired. Counsel explained that Dow Corning's e-mails reveal that Dow Corning always wanted to tie Gason's transfer date to the date her visa expires. Therefore, counsel continued, the preliminary injunction should extend until the expiration of Gason's visa, not the June 2015 date that Dow Corning identified. This argument is foreclosed at this stage, however, given the facts provided in Gason's verified complaint: "In September 2014, the Company told Gason that she would be transferred to a position in Belgium in late June 2015. The June 2015 transfer date coincides with the date the Company told Gason her L1 Visa would expire." Compl. ¶ 26-27.

Gason claims that she will suffer an irreparable injury if she is required to return to Belgium in April. She claims that she has a "fundamental legal right to live and work in the United States that will be impaired if defendant is permitted to accelerate her transfer." Reply 6. Furthermore, she continues, "[e]ven if she has to leave the country when her visa expires in October, the loss of her rights prior to this time are immeasurable and cannot be repaired." *Id*.

At the hearing, the Court requested counsel to identify any type of harm that Gason would incur from moving her transfer date to April 2015, given that she was notified of the date about two months earlier in January 2015 and knew that Dow Corning intended her to return to Belgium as early as September 2014; counsel did not do so. Counsel acknowledged that other forms of harm—such as taking a loss when attempting to sell her Michigan home—would be compensable through damages and do not warrant a preliminary injunction.

Gason has not shown that she will suffer an irreparable harm if she is forced to relocate to Belgium in April rather than in June. Contrary to her assertion, she does not have a "fundamental legal right to live and work in the United States. Indeed, Gason cites no authority for the proposition. But courts have held that only United States citizens have "the right to live in the United States for as long as one sees fit." *Lopez v. Franklin*, 427 F.Supp. 345, 349 (E.D. Mich. 1977); *see also Oforji v. Ashcroft*, 354 F.3d 609, 616 (7th Cir. 2003) (citizen-children "have the legal right to remain in the United States," although non-citizen parent does not). As a Belgian citizen, Gason does not have a "fundamental right" to remain in the United States. Therefore, she will not suffer irreparable harm if she is forced to relocate for her job sixty days earlier than originally planned.

**D.**

Gason contends that a preliminary injunction prohibiting her transfer will not result in any harm to Dow Corning because she has already been performing her transfer-job functions since January 2015. In essence, she is already performing the job functions, but she would prefer to do them here in the United States rather than in Belgium.

However, because she has not demonstrated a likelihood of success on the merits, and because she has not shown that she will suffer an irreparable harm, the balance of equities does not favor injunctive relief.

**E.**

Lastly, Gason maintains that granting the preliminary injunction is in the public interest because it will preserve the status quo. But because Gason has not demonstrated a likelihood of success on the merits, the public interest is best served by denying the request for preliminary injunction. *See, e.g., FieldTurf USA, Inc. v. Astroturf, LLC*, 725 F. Supp. 2d 609, 618 (E.D. Mich. 2010).

**IV**.

Accordingly, it is **ORDERED** that Plaintiff Lucia Gason's Motion for Preliminary Injunction (ECF No. 6) is **DENIED.**

                                            s/Thomas L. Ludington
                                            THOMAS L. LUDINGTON
                                            United States District Judge

Dated: March 26, 2015

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 26, 2015.

                        s/Suzanne M. Gammon
                        SUZANNE M. GAMMON