UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LUCIA GASON,

                Plaintiff,                Case No. 15-cv-10770

v                                             Honorable Thomas L. Ludington

DOW CORNING CORPORATION,

                Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Lucia Gason initiated the above captioned matter by filing her complaint on March 3, 2015. ECF No. 1. In her initial complaint Gason alleged that her employer, Defendant Dow Corning Corporation, sought to transfer her to Belgium in retaliation for filing a race and national origin discrimination complaint with the Equal Employment Opportunity Commission. ECF No. 1. She also alleged that Dow Corning was retaliating against her in violation of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"). After the Court denied Gason's motion for a preliminary injunction on March 26, 2015, Gason was transferred to Belgium. She then filed an amended complaint on April 20, 2016, omitting her claim of race and national origin discrimination, and adding allegations that Dow had breached a promise to obtain a Green Card on her behalf. ECF No. 16. She also raised claims of fraudulent misrepresentation and promissory estoppel. *Id.*

After stipulating to the dismissal of Plaintiff's § 1981 and ELCRA claims, Defendant Dow filed its motion for summary judgment. ECF No. 28. For the reasons stated below, Dow's motion will be granted, and Gason's claims will be dismissed.

**I.**

**A.**

Plaintiff Lucia Gason is a citizen of Belgium. She began working for Dow Corning Europe in 1993 in Belgium. *See* Gason Dep. 21, ECF No. 28 Ex. 3. On February 1, 2007, Gason transferred to Defendant Dow Corning Corporation ("Dow") in Midland, Michigan, where she worked as an expatriate under an L-1B non-managerial temporary work visa. Resp. to Summ. J. Ex. 2; Gason Dep. 16. At the time of her transfer, Gason was told that she would work in the United States under her L-1B visa for a maximum of five years. Resp. to Summ. J. Ex. 2; Gason Dep. 34. After Gason began working in a managerial position for Defendant Dow in 2009, she received an L-1A managerial temporary work visa. *See* Gason Dep. 36.

In September of 2011 Gason was told that she would be returning to Belgium sometime in 2012. *Id*. at 57-59. That return did not materialize, however, because Gason was offered the position of Director of Procurement with Defendant Dow in early 2012. *Id*. at 60. Because the position was director-level, accepting it would require Gason to relinquish her status as an expatriate and localize in the United States. *Id*. at 62.

Gason was provided with a summary of the "main terms and conditions that apply to the completion of your International assignment and your localization from Belgium" in a memorandum dated February 23, 2012. Resp. to Summ. J. Ex. 30. The summary explains that Gason would complete her international assignment on March 31, 2012, and begin her United States assignment on April 1, 2012. *Id*. While the summary discusses numerous benefits that accompanied the localization, including relocation allowances, storage, compensation, vacation, housing payments, tax assistance, pension, and benefits, it makes no mention of permanent residency or the Green Card process. *Id*.

Gason testified that she likely had numerous face-to-face meetings with Heidi Landry-Chan, Vice President for Procurement and Logistics, Peggy Gerstacker, and Human Resources Manager, about localization. Gason did not remember Ms. Landry-Chan using the term "Green Card" or "permanent residency" at any time. Gason Dep. 73-76, 82. She testified that Ms. Gerstacker mentioned that Defendant Dow could begin pursuing a Green Card once Gason's localization was approved. *See* Gason Dep. 83-84. Gason testified that, although Ms. Gerstacker never stated that Dow Corning was promising her that she would receive a Green Card, she understood that to be an implicit promise. *Id.* Gason never asked Ms. Gerstacker about whether Dow was promising to obtain a Green Card for her. *Id.* at 85.

Gason testified that she spoke with Mr. Schroeder, Director of Direct Procurement Activities, about the localization process and the benefits of obtaining a Green Card near the time of her localization. *See* Gason Dep. 87-90. She did not recall Mr. Schroeder stating that Dow Corning would get her a Green Card, but believed that it was implicit because she could not sponsor herself. *Id.* at 90. Gason also testified that, to her knowledge, Mr. Schroeder played no role in offering her the director position, and that he was a peer that could not affect the terms or conditions of her employment. *Id.*

Gason eventually accepted the position in late February. Resp. to Summ. J. Ex. 30. Her decision to accept the position was partially based on her desire to obtain a Green Card. Gason does not dispute that the position was an at-will position, and that the employment relationship could be terminated by either Dow or Gason at any time, with or without cause.

**B.**

As explained by Plaintiff's expert, Immigration Attorney Leila Freijy, the process for obtaining a Green Card has numerous steps. In most cases, the party seeking a Green Card first

must obtain labor certification through the Program Electronic Review Management, or PERM process. *See* Freijy Dep. 49-50. The PERM process requires employers to "conduct a test of the U.S. labor market to see if there are any qualified U.S. workers available to fill the position." *Id*. at 50. This first requires the employers to develop a job description for the position in question. *Id*. at 53. The description must match the job that the employee will have at the time his or her Green Card application is approved. *Id*. The employee and employer also must work together to determine the minimum requirements for the position. *Id*. at 53-54. The employer then must get confirmation from the employee's prior employers and professors that the employee seeking the Green Card actually meets the minimum requirements of their own PERM application. *Id*. at 54. The employer also must request a prevailing wage determination for the position in question from the Department of Labor, which usually takes right around 60 days to receive. *Id*. at 61.

After the job description is developed, the employer begins the recruitment process. The employer must advertise the position in two Sunday print ads and post the position on the state's unemployment website for at least 30 days. *Id*. at 51. The employer also must post the position internally for at least ten consecutive business days. *Id*. The employer must wait an additional 30 days to ensure that any applicants have an opportunity to respond. *Id*. If the employer receives resumes from United States citizens that appear to meet most of the requirements, then the employer must at least conduct a telephone interview. *Id*. at 57.

The employer must then file the PERM application, or ETA-89, within 180 days of the date that the recruitment process began. *Id*. at 51. By filing the PERM application, the employer is "basically attesting to the fact that we have tested the U.S. labor market, [and] we have not found a qualified U.S. worker." *Id*. at 58. Six or seven months later, the employer will either receive the approved PERM application, or a notice that the application has been selected for

audit. *Id*. at 70. Ms. Freijy testified that Ms. Gason's PERM application was "99 percent" likely to be audited based on the position's minimum requirements. *Id*. at 58. She testified that an audit adds at least ten months to the process, and that once a PERM application is chosen for audit it has a higher rate of denial. *Id*. at 73-74.

If a PERM application is approved then the employer and employee must take two additional steps. *Id*. at 76. First, they must file an immigrant petition, which requires a formal request for an immigrant visa number filed by the employer and an application for an adjustment of status filed by the employee. *Id*. at 76-77. The employee also must file an application for employment and travel authorization. *Id*. at 77. In Gason's case, the two steps could be taken concurrently, based on her country of origin and the position requirements. *Id*. at 76. Ms. Freijy testified that it usually takes up to 90 days for the government to process those documents. *Id*. at 79. Altogether, Ms. Freijy believed that the process of obtaining a Green Card for Gason, if successful, would have taken around 20 months to complete. *Id*. at 81.

Ms. Freijy testified that, while it was desirable to complete the Green Card process prior to Gason's L-1A expiration date, it was not legally necessary as long as there was some other option, such as her returning to Belgium to work while the application remained pending. *Id*. at 109. Ms. Freijy also testified that nothing about the process of pursuing a Green Card would change an employee's at-will status. *Id*. at 101.

**C.**

At the time Gason accepted the localized position with Defendant Dow, more than three years remained on her L-1A temporary visa. In 2012 Fragomen, Del Rey, Bernsen & Loewy, LLP, the law firm that serves as outside counsel to Defendant Dow in immigration matters, sent Dow two questionnaires to begin the PERM process. Mot. for Summ. J. Ex. L. Dow Corning

relocation specialist Ranae Ratajczak then emailed Gason the employee PERM questionnaire in August of 2012 to obtain information regarding Gason's work experience, education, and other relevant information to develop a job description and minimum position requirements. Mot. for Summ. J. Ex. I DCC001082. Plaintiff did not respond or return the questionnaire despite follow-up requests sent by Ms. Ratajczak on September 17, 2012, October 30, 2012, and February 12, 2013. *Id*.

**i.**

From late 2012 into 2013, Defendant Dow began a corporate restructuring program, consolidating two business units and eliminating 500 positions. As a result of the program, Gason's position was eliminated and combined with another position to create the new position of Global Procurement Shared Services Manager. Mot. for Summ. J. Ex. 17. The employee who previously held the other position was terminated and Gason was offered the newly created position, which she accepted and began performing on April 1, 2013. *See* Gason Dep. 117.

Because Gason's position with Dow changed, Dow had to restart Gason's PERM application to correspond to the newly created position. In an email dated April 3, 2013 Ms. Gerstacker explained that Dow should move forward with Gason's promotion before moving forward with the PERM process, because otherwise Gason could not be promoted to her new position until the end of the Green Card process. Resp. to Summ. J. Ex. 13.

On April 24, 2013, a paralegal from Fragomen emailed Ms. Ratajczak to ask if Gason had completed the employee questionnaire she received in August of 2012. *Id*. Mr. Ratajczak responded that Gason had moved into a new position, and that once her promotion went into effect they would send her a new employee questionnaire. *Id*. Ms. Ratajczak speculated that it would likely be a few weeks before the job description was done. *Id*.

As of May 31, Dow still did not have a job description prepared. *Id*. Ms. Ratajczak informed Fragomen that they would not know the extent of Gason's new position until after June 10th, and so likely would not have a job description prepared until close to July. *Id*. The beginning of July came and went, and Dow still did not have a job description prepared. *Id*. On July 19, 2013, a Fragomen senior associate emailed Ms. Ratajcak to recommend that the issue be resolved "sooner rather than later" considering that the Green Card application process was expected to take around 15 months and Gason's L-1A visa was set to expire on April 20, 2015. *Id*.

### ii.

Gason's job description was not finalized until September 13, 2013, at which time Ms. Ratajzcak sent the employer questionnaire and job description to Fragomen. Mot. for Summ. J. Ex. J. Fragomen then sent Gason a new employee questionnaire on September 18, 2013, which she returned on October 18, 2013. Resp. to Summ. J. Ex. 18. A draft of Gason's Master Document was completed by November 19, 2013. *See* Mot. for Summ. J. Ex. I, Dep. Ex. 103. In an email sent that same day, Ms. Ratajczak told Fragomen and Gason that once the draft was reviewed and finalized they could move forward with the PERM process. *Id*. Gason provided input to the draft on November 20, 2013, explaining that the document did not contain all of the roles she had performed between 2007 and 2012. *Id*.

That same day, Ms. Ratajczak asked Gason to work with Human Resources to update the Master Document to include the omitted roles. *Id*. The next day, on November 21, 2013 Ms. Ratajczak emailed Fragomen and Gason to explain that time was of the essence. Mot. for Summ. J. Ex. I, Dep. Ex 113. Ms. Ratajczak explained that, based upon previous calculations, Ms. Gason's visa would expire on April 20, 2015, but that the Green Card process likely would not

be completed before May of 2015. *Id*. She therefore suggested that Gason work to gather evidence of time spent outside of the United States because such time could be "recaptured" for the purpose of calculating her seven-year L-IA visa limit. *Id*. She also suggested that the parties complete the Master Document as soon as possible so that the position could be posted as soon as possible. *Id*.

On December 10, 2013 Ms. Ratajczak emailed Gason to ask if she had made her edits to the Master Document, and reminded her that they were on a "tight timeline." *Id*. Then, on December 17, 2013 Director of Human Resources Elizabeth Stokes asked Gason if it was possible for her to complete her edits by the next day because she was "getting very nervous regarding the timeline." Mot. for Summ. J. Ex. I, Dep. Ex. 106. Ultimately, Gason did not provide her updates to the master document until January 28, 2014. *Id*. at Dep. Ex. 113.

After receiving Gason's updates, Ms. Ratajczak sent an updated Master Document to Gason and Fragomen on February 10, 2014. Mot. for Summ. J. Ex. I, Dep. Ex. 117. Gason replied with some additional concerns regarding how her most current position was listed. *Id*. On March 7, 2014 Ms. Ratajczak requested updates from Gason regarding those concerns. After numerous reminders from Ms. Ratajczak, Immigration Specialist Kim Butler, and Ms. Stokes, Gason finally provided the relevant updates on April 15, 2014. *Id*. at Dep. Ex. 118.

After finalizing the Master Document, Fragomen filed a request with the department of labor for a prevailing wage determination on May 22, 2014. The position was ultimately posted on or around August 13, 2014. *See* Mot. for Summ. Ex. A.

### iii.

Two weeks after the recruitment process was initiated, Ms. Butler sent an email to Fragomen requesting that it "hold off doing anything further on the Lucia Gason matter." Resp.

to Summ. J. Ex. 26. Ms. Butler explained that Dow was discussing sending Gason back to Belgium within the next four or five months. *Id*. She also cautioned that Gason was "unaware of this information and is currently under the impression that we are proceeding as normal." *Id*. Gason was removed from the Procurement Shared Services Manger position on September 29, 2014. She was informed that the process of applying for a Green Card would be stopped and that she would be returned to a demoted position in Belgium in the first quarter of 2015. Gason Dep. 184.

### D.

Gason responded by filing a charge of discrimination with the EEOC alleging national origin and ancestry discrimination based on alleged misconduct of Landry-Chan in October of 2014. She then filed the present action on March 3, 2015, alleging that through its conduct Defendant Dow had violated 42 U.S.C. § 1981, Title VII of the Civil Rights Act, and ELCRA. ECF No. 1. On March 13, 2015 Gason filed a motion for a preliminary injunction, seeking to prevent Dow from transferring her to Belgium in April of 2015. ECF No. 6. After a hearing was held on March 25, 2015, Gason's motion was denied on the grounds that she had neither established a likelihood of success on the merits of her claims, nor had she demonstrated that she would suffer an irreparable injury if required to return to Belgium in April. ECF No. 12. Gason was ultimately transferred to a demoted position in Belgium in April of 2015. *Id*. at 196-97.

Gason filed an amended complaint on April 20, 2015, omitting her Title VII claim and adding claims of fraudulent misrepresentation, promissory estoppel, and breach of contract based on Dow's failure to obtain a Green Card for her after allegedly promising her that it would do so. ECF No. 16. On October 29, 2015 the parties stipulated to the dismissal of Gason's § 1981 and

ELCRA claims. ECF No. 26. Accordingly, all of Gason's remaining claims are premised upon Gason's allegation that Defendant Dow promised to obtain a Green Card on her behalf.

## II.

Defendant now moves for summary judgment. A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). The Court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

### A.

Defendant Dow first moves for summary judgment as to Plaintiff Gason's fraudulent misrepresentation claim. In her complaint, Gason alleges that Dow falsely represented that it would obtain a green card for her intending Gason to rely on that false representation, and that Gason detrimentally relied on the representation. Defendant argues that this claim should be dismissed because Gason has presented no evidence that Dow represented that it would obtain a Green Card for Gason. Dow also argues that Gason has produced no evidence that Dow knew any such representation to be false at the time it was allegedly made.

A plaintiff bears the burden of proving fraud by "clear, satisfactory, and convincing evidence". *Cooper v. Auto Club Ins. Ass'n*, 751 N.W.2d 443, 451 (Mich. 2008) (internal quotations and citation omitted). In order to prove fraudulent misrepresentation under Michigan law, a plaintiff must prove the following six elements: (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, it knew it was false, or the defendant made the representation recklessly, without any knowledge of its truth, and as a positive assertion; (4) the defendant made the representation with the intention that it should be acted on by the plaintiff; (5) the plaintiff acted in reliance on the representation; and (6) the plaintiff suffered injury due to her reliance on the representation. *See Hord v. Envtl. Research Inst. of Michigan*, 617 N.W.2d 543, 546 (Mich. 2000).

As Defendant emphasizes, Gason has not satisfied the first element of fraudulent misrepresentation. While Dow did agree to localize Gason in the United States, there is no evidence that Dow represented to Gason that it would obtain a Green Card for her as part of that process. At most, by localizing Gason Dow agreed to begin the process of sponsoring her for a Green Card. There is no evidence that Dow made any promises to Gason regarding the outcome of that process. The fact that Gason thought Dow was promising to obtain a Green Card for her does not affect this analysis because "[a] plaintiff's subjective misunderstanding of information that is not objectively false or misleading cannot mean that a defendant has committed the tort of fraudulent misrepresentation." *Hord* 617 N.W.2d at 549.

In the alternative, Gason argues that Defendant Dow committed silent fraud by failing to disclose that it would not successfully obtain a Green Card for her. "[I]n order to prove a claim of silent fraud, a plaintiff must show that some type of representation that was false or misleading was made and that there was a legal or equitable duty of disclosure." *M&D, Inc. v.*

*W.B. McConkey*, 585 N.W.2d 33, 39 (Mich. App. 1998). "[M]ere nondisclosure is insufficient." *Hord*, 617 N.W.2d at 550. A duty of disclosure may be found where a plaintiff makes inquiries to a defendant, "to which the defendant makes incomplete replies that are truthful in themselves but omit material information. *Id.* Plaintiff Gason has not identified any legal or equitable duty of disclosure. She has not identified any specific inquiry she directed at Dow regarding any promise to obtain a Green Card. She has not identified any instance in which Dow gave an incomplete reply to an inquiry she made regarding whether it would successfully obtain a Green Card for her. She thus has not established a claim of silent fraud.

Gason attempts to save her fraudulent misrepresentation claim by recharacterizing it. While in her complaint Gason pled an allegation that Dow misrepresented that it would *obtain* a Green Card for her, she now argues that Dow misrepresented that it would *sponsor* her for a Green Card. Not only did Gason fail to plead such an argument in her complaint, she never attempted to amend her complaint so as to put Defendant Dow on notice of this new theory of recovery. Gason may not argue such a claim for the first time in a response to a motion for summary judgment. *See Tucker v. Union of Needletrades, Indus. & Textile Employees,* 407 F.3d 784, 786 (6th Cir. 2005).

Even if Gason had properly pled such a claim it would fail. All of the evidence suggests that Dow took numerous steps to sponsor her for a Green Card, and thus any representation that it would do so would not have been false at the time it was made. Moreover, any promise to sponsor her for a Green Card would not relate to past or existing facts, and therefore would be a future promise insufficient to form the basis of a fraud claim. *See Marrero v. McDonnell Douglas Capital Corp.*, 505 N.W.2d 275, 279 (Mich. Ct. App. 1993) ("[a] mere broken promise does not constitute fraud, nor is it evidence of fraud."). Because Gason has not identified any

material misrepresentation or any material omission, her fraudulent misrepresentation claim will be dismissed.

**B.**

Defendant Dow also moves for summary judgment on Gason's promissory estoppel claim that she detrimentally relied on Dow's promise to obtain a Green Card for her. To establish a claim of promissory estoppel, a plaintiff must demonstrate the following: (1) the existence of a clear and definite promise; (2) the promise is such that the promisor should reasonably expect to induce action or forbearance on the part of the promisee; (3) the promissee acts or forbears from acting in reliance on the promise; and (4) the promise must be enforced to avoid injustice. *See State Bank of Standish v. Curry,* 500 N.W.2d 104, 107 (Mich. 1993). The doctrine of promissory estoppel must be cautiously applied. *Id*.

As with her claim of fraud, Gason is unable to establish the first element of promissory estoppel because she has presented no evidence that Dow made a clear and definite promise to obtain a Green Card for her. Instead, Gason repeats her subjective understanding that her localization agreement implicitly included a promise that Dow would sponsor her for a Green Card. Not only does this subjective understanding fail to satisfy the requirement that any promise be "clear and definite," but it has no bearing on Gason's claim that Dow promised to *obtain* a Green Card for her. Summary judgment will be granted in favor of Defendant Dow as to Gason's promissory estoppel claim.

**C.**

Finally, Defendant Dow moves to dismiss Gason's breach of contract claim. Gason alleges that, in consideration for relinquishing her expatriate status and accepting the localized Director position with Dow, Dow agreed to obtain a green card for her. To establish that such a

contract existed, Gason must demonstrate five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *AFT Michigan v. State of Michigan*, 866 N.W.2d 782, 804 (Mich. 2015) (citing *Detroit Trust Co. v. Struggles*, 286 N.W. 844 (Mich. 1939)).

Defendant argues that Gason has not established a mutuality of agreement between the parties. To establish mutuality of agreement, a plaintiff must demonstrate a "meeting of the minds" on all essential contract terms. *See Kamalnath v. Mercy Mem'l Hosp. Corp.*, 487 N.W.2d 499, 503 (Mich. Ct. App. 1992). "A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Id.* (quotation and citation omitted). Furthermore, a "mere expression of intention does not make a binding contract". *Id.* Instead, "[t]he burden is on plaintiffs to show the existence of the contract sought to be enforced, and no presumption will be indulged in favor of the execution of a contract since, regardless of the equities in a case, the court cannot make a contract for the parties when none exists." *Id.* at 504.

Gason has presented no evidence that the parties mutually agreed that Dow would obtain a Green Card for her. Instead, Gason again attempts to recharacterize her claim, arguing for the first time that Dow agreed to "exercis[e] its best efforts to sponsor her for a green card." Gason did not plead such a claim in her complaint, did not move to amend her complaint to add such a claim, and therefore may not argue the claim in her response to Dow's motion for summary judgment. *See Tucker v. Union of Needletrades, Indus. & Textile Employees,* 407 F.3d 784, 786 (6th Cir. 2005).

The Court will not impose a contract between the parties in the absence of any evidence that Dow obligated itself to successfully obtain a Green Card for Gason. Such a holding would

be incompatible with the doctrine of employment at-will, as well as the basic tenets of contract law. Defendant Dow's motion for summary judgment will therefore be granted.

### III.

Accordingly, it is **ORDERED** that Defendant Dow Corning's motion for summary judgment, ECF No. 28, is **GRANTED**.

It is further **ORDERED** that Plaintiff Gason's Amended Complaint, ECF No. 16, is **DISMISSED with prejudice**. This is a final order and closes the case.

                                            s/Thomas L. Ludington
                                            THOMAS L. LUDINGTON
                                            United States District Judge

Dated: March 16, 2016

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 16, 2016.

                               s/Michael A. Sian
                               MICHAEL A. SIAN, Case Manager